UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACK WESLEY COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 2827 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| RETRIEVAL-MASTERS CREDITORS BUREAU, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Jack Cooper sued Retrieval-Masters Credit Bureau ("RMCB"), alleging a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Doc. 1. The court granted Cooper summary judgment as to liability, and the case proceeded to a damages trial. Docs. 46-47 (reported at 2017 WL 2404952 (N.D. Ill. June 2, 2017)). The jury awarded Cooper $500 in statutory damages and zero actual damages, and judgment was entered in that amount. Docs. 94, 96. Cooper now moves under 15 U.S.C. § 1692k(a)(3) for an award of $65,357.90 in attorney fees and $1,042.37 in costs. Doc. 98. The motion is granted in part and denied in part.

**Background**

The factual backdrop of this suit is set forth in the court's summary judgment opinion, familiarity with which is assumed. Cooper filed suit in early March 2016; as permitted by 15 U.S.C. § 1692k(a), he sought statutory and actual damages and attorney fees. Doc. 1. Some five months later, at a July 28, 2016 settlement conference before Magistrate Judge Finnegan, RMCB offered to settle for $500 in damages plus the reasonable attorney fees and costs that Cooper had incurred to date. Doc. 112 at 8; Doc. 129 at 15-16; Doc. 129-1 at 18. Cooper rejected the offer. Doc. 129 at 16. As noted, the jury ultimately awarded Cooper $500 in statutory damages—half

1

the $1,000 maximum authorized by 15 U.S.C. § 1692k(a)(2)(A)—and zero actual damages. Docs. 93-94.

## Discussion

"Plaintiffs who prevail under the [FDCPA] are entitled to an award of costs and reasonable attorney's fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009). The parties agree that Cooper qualifies for a fee and cost award, Doc. 112 at 8, but dispute its proper amount.

**I.     Attorney Fees**

"Although there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar—the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." *Schlacher*, 574 F.3d at 856 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983)); *see also Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010) ("The touchstone for a district court's calculation of attorney's fees is the lodestar method, which is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended."). "[T]he lodestar figure is just the starting point." *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018) (internal quotation marks omitted). After calculating the lodestar, "[t]he district court may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher*, 574 F.3d at 856-57.

**A.     Calculating the Lodestar**

**1.     Hours Reasonably Expended**

RMCB "must pay for hours reasonably expended by [Cooper's counsel]. That means [RMCB] is not required to pay for hours that are 'excessive, redundant, or otherwise

unnecessary.'" *Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012) (quoting *Hensley*, 461 U.S. at 434). The procedural history of this case bears greatly on the amount of attorney time for which Cooper should be compensated.

The key aspects of the procedural history are these: in late July 2016, Cooper rejected an offer to settle the case for $500 in damages plus reasonable attorney fees and costs, and at trial more than a year later, he obtained … $500 in damages. Doc. 94. The congruence between RMCB's offer and the jury verdict matters. In *Moriarty v. Svec*, 233 F.3d 955 (7th Cir. 2000) (*Moriarty II*), the Seventh Circuit held that "[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply." *Id.* at 967. Significant for present purposes, the court explained that "an offer is substantial if … the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Ibid*. "In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer." *Ibid*. "If the district court chooses to use a substantial offer as a cut-off point for the award of attorneys' fees … [it] must offer an explanation as to why it chooses to use one substantial offer as a cut-off, but not another." *Moriarty ex rel. Local Union No. 727 v. Svec*, 429 F.3d 710, 720 (7th Cir. 2005) (*Moriarty III*).

RMCB's July 2016 settlement offer was a substantial one within the meaning of *Moriarty II*. For starters, RMCB's offer of $500 in damages exactly matched Cooper's ultimate recovery at trial. *See Moriarty II*, 233 F.3d at 967. Of equal if not greater importance, Cooper and his attorneys knew—as his trial testimony ultimately demonstrated—that at the time he received the letter from RMCB that violated the FDCPA, he was experiencing numerous personal difficulties. Cooper's mother, sister, and brother-in-law had recently passed away, and he had recently lost

3

the job he had held for 28 years and could no longer afford the apartment where he had lived for 23 years. From the point of view of a reasonable juror, the distress Cooper experienced in the aftermath of receiving RMCB's letter was almost certainly attributable solely to those tragic and unfortunate family- and employment-related circumstances, not to the letter's single FDCPA-violative sentence. Doc. 1-1 at 6; 2017 WL 2404952, at *2. Consequently, from the outset of this case, Cooper and his lawyers knew (or absolutely should have known) that the jury would be highly unlikely to award any actual damages, which in turn would depress any statutory damage award. *See Lassiter v. Integrity Sol. Servs., Inc.*, 2014 WL 1977216, at *2 (D. Colo. May 15, 2014) (considering the absence of "evidence that the letter caused [the plaintiff] distress or anxiety" in awarding $150 in statutory damages); *Weiss v. Zwicker & Assocs., P.C.*, 664 F. Supp. 2d 214, 218 (E.D.N.Y. 2009) (finding a $500 statutory damage award "appropriate" where the plaintiff "suffered no actual damages").

Moreover, Cooper's counsel knew (or absolutely should have known) that a jury fairly applying the nonexclusive factors set forth § 1692k(b)(1) to guide the assessment of statutory damages—"the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional," 15 U.S.C. § 1692k(b)(1)—was unlikely to award the $1,000 maximum. Cooper's only evidence bearing on the first and second factors was the single FDCPA-violative sentence in RMCB's one-page letter, Doc. 1-1 at 6; 2017 WL 2404952, at *2, and he presented no evidence relevant to the third factor. By going to trial, Cooper's counsel took the real risk that he would receive even less than the $500 in damages that RMCB offered in July 2016. *See Lester E. Cox Med. Ctr. v. Huntsman*, 408 F.3d 989, 993-94 (8th Cir. 2005) (finding no abuse of discretion in declining to award statutory damages, explaining that, "[f]or *de minimis* or technical violations, some courts refuse

4

to award statutory damages"); *Graziano v. Harrison*, 950 F.2d 107, 114 (3d Cir. 1991) ("[I]n the instance of a single, trivial, and unintentional violation of the Act, it is within the court's discretion to decline to award statutory damages at all.").

Because Cooper was unlikely to recover at trial anything more than RMCB's reasonable settlement offer, proceeding to trial was likely to provide him with no benefit. *See Paz v. Portfolio Recovery Assocs., LLC*, 2017 WL 6506462, at *6 (N.D. Ill. Aug. 2, 2017) (applying *Moriarty II* to reduce the recoverable attorney time where the "primary benefit" of proceeding to trial "solely for the possibility of actual damages" "would be derived by [the plaintiff's] attorneys alone"), *report and recommendation adopted*, 2017 WL 6523151 (N.D. Ill. Sept. 29, 2017). Accordingly, the fees that Cooper requests for work his attorneys performed after late July 2016 are not reasonable. *See Moriarty II*, 233 F.3d at 967; *Paz*, 2017 WL 6506462, at *7 (denying fees for post-settlement offer work where the plaintiff's "decision to go to trial after [the defendant's last settlement offer] was … unreasonable"); *Capps v. Drake*, 2017 WL 1178263, at *12 (S.D. Ill. Mar. 30, 2017) (limiting the lodestar "by cutting-off any award of attorney's fees after the date on which Plaintiff, through counsel, rejected Defendants' substantial settlement offer of $200,000," reasoning that rejecting the offer "unduly prolonged [the] litigation" because, "at the time of the … offer, it appears that the jury award, as well as attorney's fees at that point, would have amounted to approximately the same amount as the settlement offer"); *Gilfand v. Planey*, 2012 WL 5845530, at *16 (N.D. Ill. Nov. 19, 2012) (reducing the fee award on the ground that "the Plaintiffs' rejection of the 2008 settlement offer … unduly prolonged this litigation").

Bounding Cooper's recoverable fees to the hours expended through RMCB's settlement offer, and including time to review it with Cooper, results in 9.6 hours for Michael Wood and

17.2 hours for Celetha Chatman. Doc. 98-1 at 2-4. RMCB contends that Wood's time is not compensable because he did not "correspond with counsel," "handle any depositions," or "sign[] … discovery requests." Doc. 112 at 11. But Wood did not bill for those tasks. Doc. 98-1 at 2-3. And having carefully reviewed Wood's and Chatman's time entries for the compensable time period, the court finds that counsel exercised appropriate "billing judgment." *Hensley*, 461 U.S. at 434; *see also Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 552 (7th Cir. 1999) ("Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended.") (internal quotation marks omitted). Those hours therefore were reasonably expended.

### 2. Reasonable Hourly Rates

Cooper requests hourly rates of $372 for Wood and $335 for Chatman. Doc. 98 at 6-8. "The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014); *see also Johnson*, 668 F.3d at 933 (same).

Wood avers that "current clients pay [his] posted rate of $372." Doc. 98-2 at 3. But, as was true in *Evans v. Portfolio Recovery Associates, LLC*, 2017 WL 2973441, at *2 (N.D. Ill. July 12, 2017), Wood billed that amount in only one of the two matters for which he provided invoices, Doc. 98-2 at 6-8, 23. Wood points to no evidence that similarly experienced attorneys in the community charge paying clients $372 per hour for work in simple and straightforward FDCPA cases like this one, nor has any decision in this District awarded Wood that hourly rate in an FDCPA case. *See Evans*, 2017 WL 2973441, at *2-3 (determining Wood's reasonable

6

hourly rate to be $300, and citing another case in which his rate was determined to be $327); *Chatman v. Stellar Recovery, Inc.*, 2017 WL 951246, at *1 (N.D. Ill. Mar. 10, 2017) (determining Wood's reasonable hourly rate after February 2016 to be $352, and $327 before then); *Farooq v. Portfolio Recovery, LLC*, 2016 WL 2909650, at *3 (N.D. Ill. May 19, 2016) ($300); *Stockman v. Glob. Credit & Collection Corp.*, 2015 WL 4999851, at *4 (N.D. Ill. Aug. 21, 2015) ($300); *Spruce v. Midland Funding, LLC*, 2015 WL 3484243, at *1 (N.D. Ill. June 1, 2015) ($327). Taking into consideration the complexity of this case, the invoices submitted by Wood, and the above-cited decisions, the court finds that a $327 hourly rate for Wood is reasonable.

Chatman identifies no evidence showing that any client has paid her requested hourly rate of $335, nor that similarly experienced attorneys in the community charge that rate in simple and straightforward FDCPA cases like this one. Doc. 129-1 at 2-4. Nor has any court in this District awarded Chatman $335 per hour in an FDCPA case. *See Chatman*, 2017 WL 951246, at *2 (determining Chatman's reasonable hourly rate after May 2016 to be $315, and $295 before then, and citing two other cases in which her rate was found to be $295). Again taking into consideration the complexity of this case and decisions issued in this District, the court finds that a $315 hourly rate for Chatman is reasonable.

\* \* \*

Thus, the lodestar is $8,557.20, comprised of $3,139.20 for Wood ($327 x 9.6 hours) and $5,418.00 ($315 x 17.2 hours) for Chatman.

B.  **Adjusting the Lodestar**

The court next must decide by how much, if at all, Cooper's fee award should depart from the lodestar. "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but

that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010); *see also Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007) ("An award of the originally calculated lodestar amount is presumptively reasonable, and it is the [defendant's] burden to convince us that a lower rate is required.") (citation and emphasis omitted). In determining whether the presumption is overcome, the court must assess whether the lodestar is "reasonable in relation to the difficulty, stakes, and outcome of the case." *Gastineau*, 592 F.3d at 748 (internal quotation marks omitted). "In making this determination, the district court considers the claims on which the party did not prevail, the size of the monetary award, and any social benefits not reflected in a small damages award." *Thorncreek*, 886 F.3d at 638. "[I]n ordering an across-the-board reduction, the district court [must] not engage in double-counting" by again considering factors already taken into account in calculating the lodestar. *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 647 (7th Cir. 1995).

As RMCB correctly observes, this was a "simple case." Doc. 112 at 8. The complaint was not quite five pages long, Doc. 1; the crucial evidence was a single sentence in a single, one-page letter, Doc. 1-1 at 6; 2017 WL 2404952, at *2; and the jury ultimately heard from just one witness, Cooper himself. Moreover, garden variety FDCPA cases like this one can "be resolved largely through forms and existing boilerplate," *Pappenfuss v. Receivable Mgmt. Servs. Corp.*, 2013 WL 5427891, at *4 (E.D. Wis. Sept. 26, 2013), and both Wood and Chatman regularly represent FDCPA plaintiffs. All that said, the court will not reduce the lodestar based on those circumstances because they already were used to set Wood's and Chatman's hourly rates.

8

A reduction in the lodestar nonetheless is appropriate due to the meager verdict Cooper obtained at trial. "The reasonableness of an award of fees is fundamentally determined by 'the degree of the plaintiff's overall success.'" *Thorncreek*, 886 F.3d at 638 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *see also Montanez*, 755 F.3d at 553 (holding that the "most important of [the] factors" a district court considers in adjusting the lodestar "is the degree of success on the merits"); *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009) (cautioning that, although "measuring fees against damages will not explain whether the fees are reasonable in any particular case," "a comparatively large fee request raises a red flag"); *Schlacher*, 574 F.3d at 857 (holding that "although there is no rule *requiring* proportionality between damages and attorney's fees, a district court may consider proportionality as one factor in determining a reasonable fee"); *Moriarty II*, 233 F.3d at 964-65 ("Where the prevailing party has achieved only limited success, the standard lodestar method may yield an excessive award and the district court may reduce the lodestar result."). Considering Cooper's degree of success does not run afoul of the prohibition on double-counting. Had Cooper expended only the lodestar fees through trial, a reduction for the differential between the damages award he sought and the award he obtained would still have been appropriate. *See Moriarty II*, 233 F.3d at 966-67 (holding that the district court did not abuse its discretion in "reducing the hours claimed by Moriarty … given [his] limited success," but remanding to the district court "to consider the settlement offer in determining a reasonable … attorney's fee").

During closing arguments, Cooper's counsel suggested that the jury award actual damages in the amount of anywhere from $6,000 to $600,000. The jury awarded zero actual damages. Given this, as well as Cooper's limited success in obtaining statutory damages, it is

appropriate to reduce the lodestar by twenty percent, for a total fee award of $6,845.76. *See*, *e.g.*, *Heling v. Creditors Collection Serv. Inc.*, 2017 WL 2539785, at *6 (E.D. Wis. June 12, 2017) (reducing the lodestar by twenty percent in light of "Plaintiff's failure to recover actual damages, sought by her throughout the case and abandoned on the eve of trial"); *Beasley v. Red Rock Fin. Servs., LLC*, 2016 WL 8261707, at *5 (E.D. Va. Aug. 31, 2016) (reducing the lodestar by fifty percent where the plaintiff recovered $100 in actual damages—"less than 1 percent … of the $23,000 [she] sued for"); *Whatley v. Creditwatch Servs., Ltd.*, 2014 WL 1287131, at *7 (E.D. Tex. Mar. 31, 2014) (reducing the lodestar by fifteen percent in light of the plaintiff's "failure to recover any actual damages" and despite his obtaining the maximum $1,000 in statutory damages); *Crafton v. Law Firm of Jonathan B. Levine*, 2014 WL 907423, at *6 (E.D. Wis. Mar. 7, 2014) (reducing the lodestar from $17,197.75 to $15,000 in light of the plaintiff's "failure to obtain actual damages").

**II.    Costs**

Section 1692k(a)(3) entitles a prevailing FDCPA plaintiff to an award of the costs incurred in pursuing the case. *See* 15 U.S.C. § 1692k(a)(3) ("[I]n the case of any successful action to enforce the foregoing liability," the defendant is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court."). Cooper seeks costs in the amount of $1,042.37, consisting of the $400 filing fee, $65 for the process server, $42.10 for the expenses incurred by a non-party in complying with a Rule 45 subpoena issued by Cooper, and $535.27 for a transcript of the deposition of Jeffrey Wollman, RMCB's chief financial officer and Rule 30(b)(6) witness. Doc. 98-1 at 12-21.

RMCB contends that it should not be responsible for the cost of preparing the deposition transcript because Cooper did not cite it in his summary judgment motion and then sought to

limit its use at trial. Doc. 112 at 32. That argument appears to rest on the erroneous premise that Cooper seeks to recover the cost of his *own* deposition transcript, *ibid.* ("Defendant objects to the deposition transcript for Plaintiff's deposition."), as Cooper in fact cited *Wollman*'s deposition testimony in his summary judgment briefing, attaching the full transcript as an exhibit, Docs. 35-1, 35-2, 35-3, 35-8, and relied it for the crucial proposition that established RMCB's liability. Doc. 35-1 at ¶¶ 12-13 (citing Wollman's deposition); 2017 WL 2404952, at *2-3 (holding that because, as Wollman admitted, "RMCB did not … report information to any credit bureau concerning Cooper's debt," the threat contained in RMCB's letter was unlawful under 15 U.S.C. § 1692e). Cooper has therefore met his burden of showing that the cost of preparing Wollman's deposition transcript was "necessarily incurred and reasonable." *Trs. of Chi. Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009); *see also Brown v. Cnty. of Cook*, 2011 WL 4007333, at *2 (N.D. Ill. Sept. 8, 2011) (shifting the cost of preparing deposition transcripts where the prevailing parties "used the … transcripts in their motion for summary judgment").

## Conclusion

For the foregoing reasons, Cooper is entitled to an award of $6,845.76 in attorney fees and $1,042.37 in costs, for a total award of $7,888.13.

May 21, 2018

United States District Judge